UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTINA A. ROBLEDO,<br><br>               Plaintiff,<br><br>      v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of the Social<br>Security Administration,<br><br>               Defendant. | CASE NO. CV ED 04-1487-PJW<br><br>MEMORANDUM OPINION AND ORDER |

## I.

## INTRODUCTION

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking reversal of the decision by Defendant Social Security Administration ("Agency") denying Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits. Alternatively, she asks the Court to remand the case to the Agency for further proceedings. After reviewing the record and for the reasons discussed below, the Agency's decision is AFFIRMED and the case is DISMISSED.

II.

BACKGROUND

Plaintiff was born on September 16, 1947, and was 56 years old at the time of the administrative hearing. (AR 46, 310.) She has an eighth-grade education, and has past relevant work as a nanny and a hotel desk clerk. (AR 55, 60, 311, 330.)

Plaintiff filed protectively for DIB on July 22, 2002, and filed her SSI application nine days later; as to both applications, she alleged disability since July 22, 2002.[1] (AR 49-51, 288-90.) The cause of Plaintiff's alleged disability was high blood pressure, diabetes, and back pain. (AR 54.)

The Agency denied Plaintiff's applications for DIB and SSI on September 23, 2002, and affirmed its denial upon reconsideration. (*See* AR 21-32.) Following the denial of her claim, Plaintiff timely requested a hearing before an administrative law judge ("ALJ"), which was granted. (AR 34.)

A hearing was held on November 18, 2003. (*See* AR 307-46.) Plaintiff appeared with her attorney and testified. (AR 307, 309-31, 337-38.) The ALJ also took the testimony of Ms. Sandra Fioretti, a vocational expert. (*See* AR 307, 331-32, 337-44.) Plaintiff's mother accompanied her to the hearing, but evidently did not testify. (*See* AR 307.)

---

[1] Plaintiff originally had alleged an onset date of March 22, 1996. (*See* AR 49.) Her counsel conceded, however, that the Agency previously had rendered a final, adverse decision on September 22, 1999. (*See* AR 14, 312-13.) Counsel stipulated to treat July 22, 2002 as Plaintiff's onset date for both her DIB and SSI applications. (*See* AR 314-15.)

1    Plaintiff testified that, although she has an eighth-grade
2 education and can read and write. (AR 310.) She denied having any
3 specialized training or being computer-literate, but stated that one
4 of her past jobs had involved helping, supervising, and hiring and
5 firing cooks in a retirement home. (See AR 330-32, 337-38.)
6 Plaintiff confirmed that she had worked as a nanny but quit that job
7 because her "arthritis [was] getting real bad" in her back and left
8 leg. (See AR 316.)
9    Regarding her symptoms and treatment regimen, Plaintiff testified
10 that she takes medication for her back pain, but stated that the pain
11 doesn't go away unless she takes "the full dosage." (AR 316-17.) She
12 also complained that she has peripheral neuropathy in her knees, which
13 manifested itself as sensations of heat and tingling, and--in
14 combination with her arthritis--would cause her to "kind of collapse
15 if I'm not standing where I can grab onto something." (AR 321-22.)
16 She added that she also experiences diabetes-related hypoglycemia and
17 blurred vision in the mornings, but admitted that her hearing was
18 unimpaired and that her diabetes is "stable" as long as she takes
19 insulin in equal doses in the morning and at night. (AR 319-20.)
20 Additionally, Plaintiff stated that she had high blood pressure, but
21 admitted that it was controlled with medication. (AR 320-21.)
22 Finally, she testified that she takes nitroglycerin for her heart "at
23 least once every two weeks." (AR 323.)
24    Plaintiff also testified about her functional limitations. (AR
25 325-29.) Because of her back pain, Plaintiff claimed to be unable to
26 stand for more than 10 minutes at a time, sit for longer than 20-
27 minute intervals, walk for more than 30 feet at a time before needing
28 to rest, and stated that she could neither sit nor walk for longer

3

than two hours total each in an eight-hour workday.  (AR 325-26.)  She denied having to lie down during the day, but estimated that she could only lift 10 pounds, claimed that climbing stairs was "very painful," and denied being able to crawl, twist, or squat.  (AR 327-29.)  Despite these claimed limitations, Plaintiff admitted that she could pull, stoop, or bend at the waist, could kneel on her right knee, and could use her hands and feet normally.  (AR 328-29.)

As to her daily activities, Plaintiff conceded that she took care of her personal hygiene, dressed herself, and cooked and cleaned without assistance.  (AR 310-11.)  She stated that, because she only drove a few blocks at a time, she shopped with the assistance of her daughter, whom she described as her "chauffeur."  (*See* AR 311.)  She added that her arthritis made it impossible for her to clean more than one room of her house per day.  (AR 316.)  Plaintiff admitted, however, that she did not use a cane, prosthetic, or back brace, denied having any environmental limitations, and conceded that her doctor had not imposed any functional restrictions on her activity.  (*See* AR 309-10, 330.)

The ALJ next took the testimony of Ms. Fioretti, the vocational expert.  (*See* AR 331-32, 337-44.)  After the expert classified Plaintiff's prior work, the ALJ posed a hypothetical question:

> [Assume] 20 and 10, so it's light lifting and carrying.  Six and six, ditto for stand and sit.  Push and pull is unlimited.  Posturals are all occasional.  No manipulative, no visual, no communicative limitations.  Environmental, unlimited except for avoid concentrated exposure to extreme cold.

(AR 339.)  Ms. Fioretti opined that a person with these hypothetical limitations could perform Plaintiff's prior work as a desk clerk.  (AR 339-41.)  The expert did, however, appear to agree with the ALJ's assessment that, if the hypothetical person could only perform sedentary work, then she could not perform this job.  (*See* AR 342-43.) The ALJ then adjourned the hearing, noting that--because of the paucity of medical evidence in the record--he would consider sending Plaintiff for a consultative medical examination at Agency expense. (*See* AR 344-46.)

On May 14, 2004, the ALJ issued his decision analyzing Plaintiff's claims under the Agency's five-step sequential evaluation process.[2]  (AR 14-20.)  At step one, the ALJ observed that the evidence showed Plaintiff had not performed any gainful activity during the relevant period.  (AR 15.)  Accordingly, he proceeded to steps two and three.

At step two, the ALJ found that Plaintiff suffered from diabetes mellitus and diffuse spondylosis of the spine, both "severe" impairments within the meaning of the applicable regulations.  (*See* AR 16.)  After discussing the medical evidence, however, the ALJ specifically concluded that Plaintiff's subjective symptom complaints were "not fully credible," and made the step-three determination that these impairments were not severe enough to meet or equal a Listing. (*See* AR 16-18.)

---

[2] The ALJ noted that Plaintiff had filed applications for DIB and SSI in April 1997, which were denied following a hearing on September 22, 1999.  (AR 14.)  The ALJ noted that these decisions had become final, and applied the presumption of continuing non-disability to Plaintiff's current applications.  (*See* AR 14.)

1    The ALJ then assessed Plaintiff's residual functional capacity. (*See* AR 17.)  After noting that the Agency reviewing physician had determined that Plaintiff could perform a full range of light work in 2002, (*see* AR 16), and that the examining physician found Plaintiff capable of "a full range of medium work," (*see* AR 16-17), the ALJ apparently gave Plaintiff the benefit of the doubt, and determined that she could "lift 20 pounds occasionally and 10 pounds frequently, walk/stand six hours, sit six hours, occasionally perform postural activities," and found that she needed only to "avoid extreme cold." (AR 18.)  On the strength of this assessment, the ALJ made the step-four determination that Plaintiff could perform her past work as a nanny or desk clerk. (AR 19.)  Thus, Plaintiff was determined to be not disabled, and therefore not entitled to DIB or SSI. (AR 20.)

    Plaintiff timely sought review of the ALJ's decision. (AR 9.) On July 1, 2003, the Appeals Council denied Plaintiff's Request for Review, and the decision of the ALJ became the final decision of the Agency. (*See* AR 6-8.)  Plaintiff then filed her Complaint in this Court.  Thereafter, the parties filed a Joint Stipulation ("Joint Stip.").

## II.

## STANDARD OF REVIEW

    "Disability" under the applicable statute is defined as the inability to perform any substantial gainful activity because of "any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  The Court may overturn the ALJ's decision

that a claimant is not disabled only if the decision is not supported by substantial evidence or is based on legal error. *See Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

Substantial evidence "'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).) It is "more than a mere scintilla but less than a preponderance," *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998), and "does not mean a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

"The Court must uphold the ALJ's conclusion even if the evidence in the record is susceptible to more than one rational interpretation." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). Indeed, if the record evidence reasonably can support either affirming or reversing the Agency's decision, this Court must not substitute its judgment for that of the ALJ. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the ALJ committed error but the error was harmless, reversal is not required. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2003)(applying the harmless error standard).

## IV.
## DISCUSSION

Plaintiff's quarrel with the decision is limited to a single issue: "[w]hether the ALJ made any credibility findings regarding [her] testimony." (Joint Stip. at 3.) Plaintiff contends that the ALJ's credibility findings were too general, (*see* Joint Stip. at 3-4); the Agency argues to the contrary. (*See* Joint Stip. at 4-8.) Upon reviewing the record, and as explained below, the Court concludes that

the ALJ's adverse credibility determination was sufficiently specific to support his ultimate finding that Plaintiff was not disabled.

As a threshold matter, the Court is mindful that "[c]redibility determinations are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). "If the ALJ's credibility finding is supported by substantial evidence in the record, [the Court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002)(citation omitted).

The Ninth Circuit recognizes that the weight to give pain or other subjective symptom testimony is a difficult determination to make because "pain is a highly idiosyncratic phenomenon, varying according to the pain threshold and stamina of the individual victim." *Howard v. Heckler*, 782 F.2d 1484, 1488 (9th Cir. 1986). More expansively, the circuit has observed:

> Unlike most medical conditions capable of supporting a finding of disability, pain cannot be objectively verified or measured . . . . [T]he very existence of pain is a completely subjective phenomenon. So is the degree of pain: The amount of pain caused by a given physical impairment can vary greatly from individual to individual.

*Fair*, 885 F.2d at 601.

The inherent difficulty in evaluating another person's experience of symptoms has led the Ninth Circuit to insist that the ALJ undertake a two-step analysis when considering a claimant's subjective symptoms testimony. First, the ALJ must examine the evidence to determine whether the claimant has met her burden of producing objective medical evidence of an impairment, *and* of showing that the impairment reasonably could be expected to produce a symptom. *See Smolen v.*

*Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996).  Once a claimant produces objective evidence of an underlying impairment that is "reasonably likely" to cause some kind of symptom, the ALJ may not reject the claimant's subjective complaints regarding the extent and severity of her symptoms merely because the severity of those symptoms cannot be supported by objective medical evidence.  *See Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991)(*en banc*)(citation omitted).  In Plaintiff's case, the ALJ did not make the determination that she suffers from a condition that could produce symptoms, although he so assumed when he skipped to the second *Smolen* step, and discussed her credibility.  (*See* AR 17-18.)

After finding that a claimant suffers from a condition capable of causing subjective symptoms, the ALJ must reach the second *Smolen* step: which requires him to assess the claimant's credibility as to the severity of those symptoms.  *See Smolen*, 80 F.3d at 1282.  Although the claimant must produce medical evidence of an underlying impairment reasonably likely to be the *cause* of her alleged symptoms, she is not required to submit medical findings to substantiate the *severity* of her symptoms.  *See Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992).  Rather, a claimant's testimony concerning the severity of her pain or other symptoms can only be rejected for specific, clear, and convincing reasons.  *Id.; see also Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996)("For the ALJ to reject the claimant's complaints, [the ALJ] must provide specific, cogent reasons for the disbelief.")(internal quotation marks and citation omitted).

In Plaintiff's case, the ALJ did reach the second *Smolen* step, when he concluded that her subjective complaints about the severity of her pain were not credible.  (*See* AR 17-18.)  After summarizing

Plaintiff's testimony at the hearing and contrasting the detailed litany of subjective symptom complaints she gave there with the much milder complaints she voiced to her doctors--none of whom had assessed any functional limitations or opined that she was disabled, (*see* AR 17-18)--the ALJ explained:

> Further eroding these complaints is the absence of physical therapy or chiropractor treatment; there is no evidence of treatment at a pain clinic or pain injections; there is no evidence of any surgery on [Plaintiff's] spine, knees or heart; there is no evidence of any end organ damage related to her diabetes or hypertension.

(AR 18.) In the same vein, the ALJ emphasized that "there is limited evidence of treatment for her knee pain and no evidence that she has been diagnosed as having arthritis of her knees or legs; there is essentially no evidence of treatment for her alleged blurry vision." (AR 18.)

The ALJ also observed that Plaintiff's symptoms appeared to be well controlled with medication such that she could perform at least light work activity, explaining:

> [Plaintiff] testified that her hypertension is controlled, takes nitroglycerin once every two weeks, still drives despite her alleged vision problem, and medication eases her back pain; she performs daily activities at least consistent with light work based upon her testimony; there is no evidence of adverse side effects to her prescription medications; [. . .] and no abnormalities of the eyes were observed when examined by [the examining physician]; no physical difficulties were observed when she filed her

>     applications, including seeing; and no physical difficulties
>     were observed when she filed her Reconsideration Disability
>     Report.

(AR 18.)  On the strength of the foregoing summary and analysis of the evidence, the ALJ summarized his credibility findings: "Based on the foregoing, [Plaintiff's] blurry vision and knee pain/arthritis complaints [are] not credible and her other complaints are partially credible," and found her capable of light work.[3]  (*See* AR 18.)

Despite Plaintiff's claim that she cannot ascertan from the decision "what 'other complaints' are only partially credible?" (*see* Joint Stip. at 3), in context the answer is clear: the ALJ rejected Plaintiff's complaints of "blurry vision and knee pain/arthritis" *in their entirety*, and considered all of her remaining subjective symptom complaints only *partially* credible--i.e., credible only to the extent that these symptoms precluded her from any job requiring a medium or greater level of exertion.  (*See* AR 18.)  Notwithstanding Plaintiff's claim that the ALJ did not offer adequate reasons for his adverse credibility determination, the Court finds the reasons the ALJ articulated are sufficiently clear, convincing, and specific to satisfy *Bunnell* and *Smolen*.

The lion's share of the ALJ's discussion of the testimony he totally rejected--i.e., Plaintiff's claims of visual deficiencies and knee pain--hinges on a single principle: that the testimony of

---

[3] Although the ALJ had noted that the examining physician had opined that Plaintiff remained "functionally capable of medium work," (*see* AR 17-18), the ALJ found that the reviewing physician's assessment of Plaintiff's residual functional capacity "was the most reliable evidence" and accepted it over the opinion of the examining physician, noting that the reviewing physician's opinion "was supported by the preponderance of evidence of record."  (AR 18.)

11

claimants who allege a myriad of subjective symptoms can be disbelieved *unless* they have sought treatment commensurate with those complaints.  (*See* AR 18.)  When determining whether a claimant's testimony regarding the severity of her pain or other symptoms is credible, the ALJ may consider, among other things, any unexplained or inadequately explained failure to seek medical treatment.  *See Bunnell*, 947 F.2d at 345; *see also Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001)(holding that the ALJ properly rejected a claimant's pain testimony where the claimant "failed to seek treatment despite his complaints of severe pain"); *Brawner v. Sec'y of Health & Human Services*, 839 F.2d 432, 433-34 (9th Cir. 1988)(holding that a claimant's actions or failure to act may undermine her credibility with regard to excess-pain testimony).  A claimant's pursuit of only conservative treatment for her symptoms, without offering any explanation for failing to seek more aggressive treatment, can be considered when evaluating her credibility.  *See Fair*, 885 F.2d at 604 (holding that the ALJ, in finding claimant's claim of disabling pain not credible, properly considered that claimant received only "minimal conservative treatment" and had not recently received physical therapy); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999)(rejecting a claimant's allegation "that she experienced pain approaching the highest level imaginable," which was "inconsistent with the minimal, conservative treatment that she received")(internal quotation marks omitted).

    In Plaintiff's case, the medical record contains only 22 pages documenting office visits during the sixteen-month period between the alleged onset date of July 2002 and the hearing in November 2003.  (*See* AR 261-82.)  During that period, Plaintiff had no eye

examination--let alone any treatment for her alleged vision problems (*see* AR 264)--and reported that she took only Motrin for her arthritis pain.[4]  (AR 262, 266.)  Where, as here, a claimant treats her symptoms with only over-the-counter medication or receives no treatment for them at all, the ALJ is entitled to conclude that those symptoms are not severe.  *See Flores v. Barnhart*, No. ED CV 04-890 PLA, 2005 WL 2093069, at *9 (C.D. Cal. Aug. 24, 2005)(affirming the ALJ's finding that a claimant's pain testimony was not credible because the evidence showed that "any back pain was controlled by over-the-counter medication"); *see also Duyck v. Chater*, 907 F.Supp. 338, 343 (D. Or. 1995)(finding that a claimant's use of only "over-the-counter medications" to treat her symptoms was sufficient reason for the ALJ to reject his complaints of excess pain).  Given that Plaintiff received no treatment for her alleged eye problems and only over-the-counter medication for her arthritis pain, the ALJ's outright rejection of these complaints is supported by substantial evidence.

The ALJ's finding that the balance of Plaintiff's subjective symptom complaints--i.e., those arising from her diabetes, hypertension, and heart problems--were only "partially" credible likewise is supported by the medical record. (*See* AR 18.)  As the ALJ found, the record shows that, when Plaintiff takes her prescribed medications, her diabetes is under control.[5]  (*See* AR 240, 261-63,

---

[4]  Prior to the pertinent period, the record only shows that Plaintiff suffered from age-related myopia and presbyopia, and received a prescription for bifocal lenses and instructions to have a yearly eye examination.  (*See* AR 212.)  By September 2003, however, Plaintiff admitted that she had had "no recent D[iabetes] M[ellitus] eye exam."  (AR 264.)

[5]  Although the ALJ did not note it, the record also shows that Plaintiff was not always fully compliant with her doctors'

13

268.)  At the hearing, Plaintiff testified that her hypertension and heart problems are controlled with medication.  (AR 320, 322-23.)  The record supports this testimony.  (*See* AR 266 (noting that Plaintiff's hypertension was "stable").)  A condition that is controllable with medication is not a basis for a disability award.  *See Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983); *see also Osenbrock v. Apfel,* 240 F.3d 1157, 1164 n.1 (9th Cir. 2001)(declining to remand where, although new evidence showed that a claimant was being treated for Type II diabetes, it also showed that "his glycemic control is excellent and that he is doing very well").

    Finally, the ALJ's determination that Plaintiff's subjective symptom complaints could not be squared with either the medical record or her physical activities is supported by substantial evidence.  It is, of course, appropriate for an ALJ assessing a claimant's credibility to take into account the discrepancies between her subjective complaints, on the one hand, and the objective medical evidence and any daily activities, on the other.  *See Morgan*, 169 F.3d at 559-600; *see also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)(noting that the ALJ may consider inconsistencies between a claimant's testimony and her conduct and daily activities when evaluating her credibility).  In Plaintiff's case--and excluding those ailments for which there was no substantial evidence or which were controlled with medication--the medical record supported only a diagnosis of "mild spondylosis through the th[oracic] spine."  (AR 207.)  Notwithstanding that diagnosis, Plaintiff told her physicians in mid-2000 that she was engaging in "daily walking [of] 1/2 mile with

---

instructions to take her prescription medications.  (*See* AR 277.)

no difficulty." (AR 191.)  Although Plaintiff testified at the hearing that she was unable to walk more than 30 feet at a time before needing to sit down, (*see* AR 325-26), the record shows that her treating physicians had been exhorting her to commit to an exercise regimen just two months earlier.[6]  (AR 265.)  In addition, Plaintiff testified to taking care of her house by herself, and occasionally driving.  (AR 310-11, 329.)

In the end, the Court concludes that the ALJ offered sufficiently specific, clear, and convincing reasons for his adverse credibility determination.  *See Drouin*, 966 F.2d at 1258.  At worst, the evidence the ALJ relied upon in rejecting some of Plaintiff's subjective complaints sometimes cut both ways: but the Court will not reverse an ALJ's credibility determination simply because it is based on contradictory or ambiguous evidence.  *See Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  For that basic reason, the decision must be affirmed.

---

[6]  At the medical examination in February 2004, Plaintiff told the physician that she could walk "2 to 3 blocks" before experiencing shortness of breath.  (AR 283.)

## IV.
## CONCLUSION

For the reasons set forth above, this Court finds that the Agency's findings were supported by substantial evidence and were free from material legal error.  Accordingly, the Court AFFIRMS the decision of the Agency.

IT IS SO ORDERED.

DATED:     June  6 , 2006.


                                                          /s/
                                      PATRICK J. WALSH
                                      UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\ROBLEDO, M\Memo Opinion.wpd